Good morning. May it please the court and counsel, my name is Jameisa Drake and I represent Victoria Davidson. In our brief, we raised several assignments of error relating to the trial and one assignment relating to the sentence. I'd like to begin, if I could, with the sentencing issue. This court previously held, in United States v. Guldi, that Mr. Guldi's conduct did not warrant a two offense level enhancement for using sophisticated means to commit or conceal the offense. So, Counselor, I think this case is very interesting in just how idiosyncratic the sentencing judge was in terms of looking at the particulars of who she was, ranging from where she went to school to what her current relationship was like. How can you, what would be your best argument for the fact that whatever the guidelines said really had any sort of impact on what the district court decided was the appropriate sentence? I mean, I have rarely seen such an idiosyncratic consideration of a defendant. Yes. The district court was, without question, very careful and very methodical in what it was doing at sentencing. The court, as most courts do, devoted nearly all of its analysis to the carceral term of the sentence and whether it would be appropriate for Ms. Davidson to serve a period of supervised release on home confinement. But there is very little discussion, there's virtually no discussion in the record, about the duration of the supervised release term. No, but there was lots of evidence about how he didn't want to interfere with her new relationship and that she had these two Ivy League degrees and she wanted to be able to go out in the world. I mean, how, I'm not sure that it would have mattered. What is your best argument for why this wouldn't be, at most, harmless error if it were error at all? So our best argument is we don't know. We can't say on this record for certain that the court would have imposed the same duration of supervised release. Even though it was such a dramatic departure? The carceral term was a departure, but the supervised release term was the maximum allowable on one count. And even though the district court was spending so much time thinking about this person's future life, how they were going to build their future life, you still think that we don't know that the district court wasn't pinpointing with a great deal of intentionality exactly the term of supervised release that was appropriate? Yes. The court, our position is the court... Okay, so what's the case that tells us that we need to be 100% sure or that what the district court said wasn't enough for us to reach a reasonable conclusion about what was, what the district court was doing based on this record? So I believe that the case law is actually worded in the negative. That if this case is confident that the court would have imposed the same sentence on remand, then the sentencing error would be deemed harmless. Our position is that there is not that degree of confidence. But you're asking us to say, you started off by saying that we don't know. And you're finding us to lack confidence because there's like one piece of information where the district court didn't say, given all of this, I would have given you the same term no matter what? I mean, is that what the standard we're supposed to look for? Some magic words like that from the district court? Well, I think there's a bit more in the record. So the court says that the sophisticated means enhancement is going to be relevant to its 3553A analysis. The 3553 analysis is relevant both to the duration of the carceral term and the term of supervised release. We don't have, as I said at the outset, discussion on the record about why the court selected 3 years as opposed to 2 years and 6 months as a term of supervised release. But we can intuit from the Court's earlier comments and from case law and instruction provided by the guidelines that it considered 3553A factors when it was determining the appropriate duration. What was wrong with the length of the supervised release? I'm sorry, Your Honor. What was wrong with the duration? The problem with the duration now is that it incorporates the court's belief that the sophisticated means enhancement applies. Let me stop there. It's not evident to me that it's sophisticated. I mean, I know we have Gildee. But she did stuff that he didn't know about and that seems pretty sophisticated to me. She represented herself as his agent. She had over a dozen phone conversations with the bank in which she tricked him into believing she was the agent. She writes a letter to whom it may concern, seeking the authorization or telling the bank that they're authorized to wire this full amount. This is not just forging a Gildee signature. It is misrepresenting herself as an agent authorized to act on his behalf. She sought instructions from the bank as to what they needed to go in that letter. I mean, why is it so clear that the district court made a mistake in concluding that this was a pretty sophisticated crime? So the district court is focused exclusively on the authorization letter that she writes. That, as Your Honor points out, is different than the two tactics that this Court considered in the Gildee case. But what do you mean by focus, though? It was in the record that she called 19 times. And it was also in the record that she double-crossed him. Right? So what do you mean focus? So the Court in its sentencing analysis is specifically saying that the sophisticated means enhancement applies to her because of the authorization letter. The Court is connecting its sophisticated means analysis to the letter. I mean, he references the letter and the concept of agency, that she assumed the role of being an agent of Mr. Gildee. And I think that is a way to incorporate all the stuff that I've just talked about. Certainly the letter is her attempt to claim agency. So, you know, our best argument with that is to say that with regard to the forged document, there is case law that I cite in my brief. There's case law that this Court cited in the Gildee decision suggesting that when forgery is the means that is sophisticated, it's more than one forgery, and the forgery is — So you're basically saying — So what is your argument about this enhancement? Are you saying it's just untethered to the record, that it's an abuse of discretion, that it's outside of the parameters of reasonability? That just like in Gildee, it does not apply as a matter of law because of what she did. And we are not denying what she did. We're not denying the seriousness of what she did, but we're saying — She looked at it and wrote and came to a different conclusion. That's not necessarily a matter of law. That's a matter of discretion superimposed on a legal principle. And are you saying that — you know, you may disagree with that. I may disagree with that. Are you saying that Judge Hellesting was just completely out of the box doing that on this record? If I may answer the question. You may, yes. Answer the question. Yes. So just as in Gildee, where there was no factual dispute, this Court said that the two tactics he employed, using cashier's checks and structuring, did not rise to the level of sophisticated means as that guideline was intended, so, too, here. Because if you do the same kind of fact-matching that this Court engaged in in Gildee with respect to the tactics he employed, with respect to the forgery at issue here, this — what Ms. Davidson did — So what if we — She also, at one point, suggested she's an attorney and that the bank, the person she's speaking to on the phone, better watch out because they might get legal action for giving her the runaround. I mean, there was a lot of deception in the course of positioning herself as an agent to get that money out of the bank. Right. And, again, we acknowledge that. But claiming that one is an attorney is not especially sophisticated, certainly not any more sophisticated than structuring or anything else. And it was all in service of this idea that she had authorization, best demonstrated by the forgery. But, again, if you — Well, so the question, I think, for us, then, is the material difference between what she did in Gildee and what happened in Gildee enough to preclude there being an abuse of discretion for applying the standard. Right? I mean, it would be different if they were exactly the same. But between, you know, Judge Livingston and I, we've highlighted at least four significant differences. So if you could explain why the gap in their behavior is so similar that the district court abuses discretion by not deciding this is — or that this is on one line and this is on the other side of the line. Because if you line up what she did with what the defendants did in Fofana and Stitsky and Kennedy and the cases that are cited in the footnote in Gildee and Amici — I'm sorry, Amico, what the fraudulent deception that those defendants are engaged in, forging multiple documents multiple times, that is not what happened here. Add to that, as I said, simply holding oneself out as an attorney in frustration with a customer services representative is not especially sophisticated either, particularly when it's followed up by an authorization that is — you know, has misspellings and misspells Gildee's name. Thank you. Good morning, and may it please the Court. My name is Jonathan Badansky. I'm an assistant United States attorney in the Southern District of New York. I represent the United States in this appeal, and I represented the United States in the district court below. I'd like to start where the Court left off with respect to the appellant's arguments regarding the sentencing in this case and the application of the sophisticated means enhancement. I agree with Your Honor's analysis that there are material differences here between Ms. Davidson's case and Mr. Gildee's case. The Government, of course, recognizes that in the case of Mr. Gildee, the Court found that the sophisticated means enhancement did not apply. But the Government agrees, as the Court has pointed out, there were material differences between the two cases. Certainly in both cases, with Ms. Davidson as well as Mr. Gildee, the use of the cashier's checks to essentially shield — Look, so fraudsters, fraud, right? Like, they misrep — she misrepresented herself, and she misrepresented herself a bunch of times. And she forged a signature, and she did it a bunch of times. Do we really need, in this case, with this record, to explore, like, how much of the sophisticated means enhancement requires a degree or a numerosity? The record was incredibly, I think, clear that the district court was giving a lot of time as to how — what an appropriate release — term of supervised release was. I think that's absolutely right, Your Honor. I think our core point is that the Court really not reached this issue, because we do believe that even if there was error in applying the sophisticated means enhancement, the issue is both moot and harmless. Turning first to mootness, obviously, the Court is aware this defendant has already served her period of incarceration and the period of home confinement. So we are now talking only about the remainder of her supervised release period. We're allowed to consider this as moot just because she's on supervised release? I mean, couldn't this have affected her supervised release term? It's fair to analyze whether or not it could have affected her supervised release term, and I think that would go to the harmlessness question. Right. But doesn't that defeat your mootness argument? I don't believe so. I think they are two different analyses. Really, I think the harmlessness analysis would be going back in time — if there was error, going back in time to the time of sentencing and analyzing if the Court would have sentenced her any differently at that time, and in particular would have given these — I was just wondering why would this be moot? I believe it's moot because I believe the record makes clear that even if this Court determines that it's appropriate to remand for resentencing, the record's clear that the district court would not impose a different period of supervised release. But that sounds like harmlessness. I think these two arguments do blend together. I think that fact also does — that conclusion also does go to harmlessness. But I think mootness is also a relevant analysis. And I think this Court has held before that if there's every indication in the record that the district court would not reduce the defendant's term of supervised release on remand, that does indicate mootness. I'm quoting there from United States v. Blackburn, 461 Federal 3rd 259. And I think there are — the analysis also differs in terms of the pieces of data that the Court would consider. So I think in both the harmlessness analysis and the mootness analysis, important data points are the comments made by Judge Hellerstein at the reopen sentencing in January of 2024, as well as the comments of Judge Hellerstein at the resentencing of Defendant George Gouldie. I think the comments in both instances indicate that Judge Hellerstein would not sentence Ms. Davidson to anything differently. But as your adversary points out, that was not addressed to the subject of the length of supervised release. And making comment — and correct me if I'm misremembering the record, but comments directed at the two-year assentence are — it's a very different question to how long does someone need to be under supervision. And if you've made a mistake, if you said you thought it was sophisticated but it's not, that could affect how long you think someone needs to be under supervision once released. It could in theory. But I believe that, taken as a whole, the comments by Judge Hellerstein just indicate that he felt that he had already given Ms. Davidson a very generous sentence by all accounts. And at the reopened sentencing, there were discussions of whether or not the revised Guideline 5C1.1 applied. And in discussing whether or not that revised guideline applied, Judge Hellerstein repeatedly made comments to the effect of whether or not the guidelines would have been different. He would not alter the sentence in that case. I think it's also important to note that after this Court determined in the case of Codefendant Gouldie that the sophisticated means enhancement did not apply and remanded for resentencing. Although the Court did alter Defendant Gouldie's sentence to time served based on medical issues present in that case that are not present here, he made clear that but for those medical issues, he would not have altered the sentence. And he did not alter the period of supervised release. Yeah, that's a tough argument, too. He's a different person with a different set of — I mean, you look at the individual when you're deciding how long somebody needs to be under supervision. I mean, you didn't really develop the argument in your brief that this was not a sophisticated means. You did preserve it — I mean, that it is sophisticated means. You did preserve it, but you didn't develop it. But I can see many ways in which that's an easier argument than whether this is harmless. In terms of the harmlessness and mootness argument, one other factor to consider, and I think you're right that it's important to look at the differences between George Gouldie and Ms. Davidson. One important difference is that in the case of Ms. Davidson, she has already been alleged to have violated the terms of her supervised release. Probation already brought a violation of supervised release petition, alleging that she had, among other things, been failing to pay her court-ordered restitution. Now, ultimately, after Ms. Davidson began to come into compliance with the terms of her supervised release, that violation petition was dismissed, but there was no finding that those allegations were not true. And so — and I think that analysis of what's transpired since sentencing does factor into the Court's mootness analysis, that were this to be resentenced, you know, another data point that Judge Hellerstein would be considering is how things have gone so far during the term of supervised release. And so far, there have already been allegations that she has violated the terms of her supervised release. And I think that makes it all the more evident that in this case, were it to be resentenced, Judge Hellerstein would have no reason to shorten the term of supervised release. If the Court has any further questions, happy to address them. Otherwise, I'm happy to rest on our submission. Thank you. Thank you. Thank you, Your Honors. I really don't have very much else to add, except to reiterate, as Your Honors did, although this Court may not feel bound by it, the government's position in its briefing was that it didn't need to reach the antecedent-substantive question, whether the sophisticated means enhancement applied here. Well, they didn't — they didn't weigh the argument. They preserved the argument. They just didn't — Do anything with it.  They certainly didn't make the points and the comments that Your Honors are making this morning. Instead, the government chose to rest the weight of its argument on these concepts of mootness and harmlessness, which, for all of the reasons that Your Honors have pointed out, don't — those two principles don't resolve this issue. I will just, in response to the supposition that because Ms. Davidson had been accused, accusations since dismissed, of being in violation of the conditions of her supervised release, we can therefore divine that no shorter term would have been imposed. That is, again, all just guesswork. I know that Your Honors are aware, so I won't belabor it, but supervised release is serious. It's onerous. It has a serious impact on people's lives. I think we can hear what it does, but it's not incarceration. So before you sit down, explain to me why this term of supervised release was inappropriate. It's inappropriate because the Court is saying that Ms. Davidson's sophisticated means was relevant to the 3553A factors, which in turn was relevant to the Court's calculation of the supervised release term. The Court doesn't say that explicitly, but if we assume the Court is following the law, then that's what happened. Well, why do you assume that? It seems to me that the appropriate assumption is that the trial judge sat through this trial. He spent time with this woman. He listened to her arguments. He heard her allocution at trial. He read her pre-sentence reports, and in his judgment, a shorter period of incarceration was warranted, but she had problems that justified a more lengthy term of supervised release. And that's—I don't know how many—that's the way this process works. And so what did Judge Hellis—how did he abuse his discretion in making that determination? Right, because to use Your Honor's terminology, one of the problems that he thought Ms. Davidson had or that was present in this case is that she used sophisticated means. Our argument is that if he— How do you know that that was the driver of the sentencing as opposed to all the other things that go into sentencing when a judge is sentencing someone? Whether he believed her allocution, whether he thought the allocution represented remorse, whether he thought that she was maybe a candidate for recidivism. So I'm not going to send her to jail, but we need to take a look at her for longer than we ordinarily would. That's how this process works. How—why didn't it work? What's your argument about why it didn't work in this case? So, again, I feel as though I'm not answering Your Honor's question. But all of the commentary that we have on the record from the Court, and this, incidentally, is why this Court cannot conclude that the error is harmless, is directed towards the length of the carceral term and whether it's appropriate for her to serve some of her supervised release on home confinement. The record is silent with respect to the duration of the supervised release term, except for the Court acknowledging that its assessment that sophisticated means were at foot here is relevant to the 3553A factors. It is into sort of that ambiguity that this Court can assume that the Court was appropriately employing the 3553A factors to determine both the carceral term and the duration. I'm confused now because I thought your argument was a robustness of explanation argument that we didn't know, that we didn't have. So the district court needed to make plain on review so that we could do that. Now it sounds like you're arguing that the district court, if somebody had handed them Goldie beforehand, would have reached a different conclusion. Which argument are you making? So I'm not arguing that there's a deficiency because of the lack of an explanation in the record. This Court's case law is clear that judges don't necessarily need to explain why they had selected the duration of supervised release that they had, as opposed to certain special conditions of supervised release. That being said, that ambiguity works in favor of our argument because this Court can have no confidence. It certainly has no confidence from comments that were made either at the reopened sentencing hearing or at Goldie's sentencing hearing that had the Court understood that sophisticated means were not at foot in this case, it would have imposed the same duration of supervised release. That is the manner in which our harmlessness argument works. Mootness is that this can't possibly be moot because she's still serving her term of supervised release. There still is an opportunity for the Court to reduce the duration of supervised release. And for all of the reasons that we've discussed this morning — Can I ask how you explain away Blackburn? And this is helping me try to understand it. I mean, I know the government has a tough spot because it's a hard case to understand what the premise is. It's formed, I think, between what the government did and answering the questions of the Chief. How should we understand how Blackburn describes mootness? Well, I think that — and I hope this answers Your Honor's question. But a court certainly has wide discretion at sentencing to select among a variety of different options. In the First Circuit, where I spend a lot of time practicing, the First Circuit makes very clear that abusive discretion is a multi-factor sort of thing. And one way in which a court can abuse its discretion is if it misapplies the law. Here, our argument is if you place this case on the continuum of other similar cases, other similar — other fact patterns, it simply does not rise to the level of what the guidelines intended or what other courts have affirmed. I was just asking — That strikes me as a completely factitious argument. And it's factitious for this reason. You cannot divine what factors drove a sentencing from simply reading cases. The judge, as I've said, spent — a judge spends time with this individual. He — if the individual testifies, of course, the case is not always the case. You listen to him. You listen to the other witnesses talk about what the defendant did, what effect it had on him. You listen to the defendant. You know, Mr. Defendant, Ms. Defendant, this is your opportunity to speak to the court in anticipation of sentencing. You can't divine any of that stuff by just simply toggling between other cases. It doesn't work that way. And, Your Honor, our response to that would be to look to the same arguments that this Court adopted in Gouldie as to why remand was appropriate and the error wasn't harmless. It said, number one, nothing suggested that the carceral term was based on factors independent of the guidelines. Here we're suggesting the Court's — this Court's just substitute carceral term with term of supervised release. And, number two, it was at least plausible that on resentencing with a lower guidelines range, the district court would find that a shorter term of incarceration would meet the goals of sentencing. Again, our recommendation is the Court just simply substitute term of incarceration with term of supervised release. Thank you. Thank you both. Very well argued. And we'll take the matter under advisement.